IIoustoN, Special X,
delivered the opinion of the court.
Cunningham Smith died in 1840, after having made and published his last will and testament, in which are the following provisions: Item 5th, “ My will and desire is, that all of my negroes, not otherwise bequeathed, shall be valued and put into lots, and divided amongst all of my children, the one drawing- the most valuable lots, to pay over to the less valuable, the diiference in cash, sháre and share alike.” Item 7th, “My will and desire is, that all of my land be sold by my executors hereinafter mentioned, to the highest bidder, on twelve months credit, and the proceeds to be equally divided between my wife and my children. It is my will and desire, that the portions or lots which are or may be assigned to Jane "Woodrum and Mary "Welch, my daughters, shall be held by them for the benefit of the heirs of their bodies, not subject to be sold, bartered or traded by their husbands.” Shortly after the death of the testator, the negroes in controversy went into the possession of Jane "Woodrum and her husband, Stephen "Woodrum, and on the 1st of March, 1847, Stephen "Woodrum and wife; by bill of sale, conveyed the negroes to the defendant, Thos. Kirkpatrick, for the consideration, as the bill of sale states, of nine hundred and thirty-six dollars, and *222 by an instrument of tbe same date, Kirkpatrick gaye them tbe right to re-purchase the slaves, upon the payment of the nine hundred and thirty-six dollars on or before the 1st of May, 1847. The bill of sale of 'Wood-rum and wife was proved by the subscribing witnesses, there being no privy examination of Jane Woodrum. The negroes remained in the -possession of Woodnim an'd wife, and they not having repaid the nine hundred and thirty-six dollars to Kirkpatrick on the 1st of May, 1847, he was proceeding to take possession of the slaves in May, 1850. Whereupon they filed a bill to prevent him, and charging that the bill of sale was only intended as a mortgage; that the purchase money had been repaid, and praying to have the slaves secured and settled upon Jane Woodrum, as provided in the will of her father.
On the 2nd of July, 1850, whilst the bill was still pending, William A. Woodrum, a son of Stephen and Jane Woodrum, and Geo. S.‘Lannum and wife, Mary E., their son-in-law and daughter, filed a cross-bill in the cause, asserting their claim to the slaves, under the will of Cunningham Smith, as heirs of the body of Jane Woodrum, and alleging, among other things, that .she has no title to them in her own right, but only as a trustee for their benefit.
The chancellor dismissed the original bill upon the ground, that the sale of the negroes by Woodrum and wife to Kirkpatrick, was not intended as a mortgage, but was an absolute sale with liberty to repurchase. Upon the cross-bill, the chancellor decreed, that Jane Wood-rum had- a separate estate for life in the slaves, under her father’s will, which she could convey, and had conveyed by the bill of sale to Kirkpatrick, and that the complainants in the cross-bill had a vested remainder in *223 tbe slaves, and Elrkpatrick was required by tire decree to execute a bond conditioned not to remove tliem from the State, and to have them forthcoming, to be delivered to complainants at the death of Jane "Woodrum. And from this decree, upon the cross-bill, both parties appealed, there being no appeal from the decree dismissing the original bill. The whole case, both as to the bill and cross-bill, is before ns for examination, and the question for our consideration is, what is the true construction of the 5th and Yth clauses of the will of Cunningham Smith? "We cannot assent to the argument that the testator intended to convey the property to his daughters merely as trustees, to hold for the benefit of their children, giving them no estate whatever in their own right. It would require very strong language, indicating such intention, to bring our minds-to such a conclusion.
"We are well satisfied that by the 5th clause, taken alone, an absolute estate in their own right is given to the daughters of the testator, and this conclusion is strengthened by referring to the former part of the Yth clause as recited in the statement of the facts of the case.
The negroes are to be valued and put into lots and divided amongst all the children; those drawing the most valuable lots, are to pay to the less valuable, the difference in cash. The land is also to be sold and the proceeds of the sale are to be equally divided between the testator’s “wife cmd his children.” Without the latter part of the Yth clause of the will, there could be no doubt that the daughters would take an estate in fee in their shares. But how is the case affected by this part of the ' Yth clause? "What did the testator mean by this provision?
He provides that “ the portions or lots which is or may be assigned to Jane "Woodrum and Mary Welch, my *224 daughters, shall be held by them for the benefit of the heirs of their bodies, not subject to .be sold, bartered, or traded by their husbands.” We cannot give any more force to the words, “to be held by them for the benefit of the heirs of their bodies,” than we would in the words “to be held by them and the heirs of their bodies,” or, “ to go to the heirs of their bodies.” In either event, whatever might be the intention of the testator, the case would fall within the rule in the case of Polk vs. Faris, and the first taker would be vested with the absolute interest. And so we think in this case, that under the 5th and 7th clauses of the will, Jane Wood-rum is vested with the absolute estate in the slaves in controversy. But by the 7th clause, we think the testator also meant to vest his daughter, Jane Woodrum, with the absolute estate in the slaves for her sole and separate use, and this intention not being in contravention of any rule of law, and the words used, being in our opinion, sufficient to create such an estate, we so construe the will, and hold that Jane Woodrum has a separate estate in fee simple, in the property bequeathed to her by Cunningham Smith.
A question is then presented, as to the effect of her joint bill of sale with her husband, to the defendant, Kirkpatrick, of the' negroes in question. She takes this separate estate under the will. It provides no mode by which she may convey or dispose of the estate. Had there been a mode pointed out in the instrument under which she derives title, she could only, pursue that mode, as has often been decided by this court. But here, there is' no provision made for her alienation of the estate. But it is not necessary for us to decide, in this case, whether or not a married woman may convey by *225 deed, ber separate estate in personal property, upon privy examination, when tbe instrument creating tbe estate makes no provision for its alienation by ber, in any manner; or whether, in such case, it can alone be done through tbe intervention of a court of chancery. "We expressly reserve that question. But there are two grounds upon which this bill of sale will be held void as to Jane "Woodrum. The will provides that the property shall be held by her, not subject'to be sold, bartered, or traded by her husband. The answer admits that the consideration for the negroes conveyed by the bill of sale to Kirkpatrick, was a prior debt, . due by her husband, Stephen Woodrum, to Kirkpatrick. The sale was for her husband’s benefit, and virtually by him, in direct contravention to the will.
Again, this bill of sale was proved by subscribing witnesses, and no privy examination of Jane Woodrum, the feme covert, was ever taken. And whether she could convey the slaves by bill of sale, with privy examination without’ resorting to a court of chancery or not, she certainly could not convey them by bill of sale, without such examination, and this bill of sale, as to her, is void, and the title' to the slaves in controversy is still' in her, under and by the will of her father, as her separate estate; and Thus. Kirkpatrick took no title from her, to the slaves, under the bill of sale. We therefore reverse the decree of the chancellor, dismissing the bill, and also his decree upon the cross bill, and order that the slaves in question be delivered up to Jane Woodrum, as her separate estate under the will of her father.